UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LELAND HAYNES, | No. 2:19-cv-1988 AC |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DAVID OREL, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983. The First Amended Complaint, ECF No. 11, is before the court for screening.

I. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639,

1

1  640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as
2  stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a
3  constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.
4  Franklin, 745 F.2d at 1227-28 (citations omitted).

5    "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
6  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
7  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550
8  U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
9  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context
10 of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman,
11 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure
12 to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a
13 cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the
14 speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain
15 something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
16 cognizable right of action.'"  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur
17 R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

18   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
19 relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
20 Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
21 content that allows the court to draw the reasonable inference that the defendant is liable for the
22 misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this
23 standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg.
24 Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the
25 pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,
26 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).
27 ////
28 ////

II. The First Amended Complaint

Plaintiff alleges that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated by a 2018 dispute regarding his compliance with the requirements of Folsom State Prison's religious diet program. The complaint presents three claims, all involving alleged interference with plaintiff's religious practice, against the following defendants: David Orel, Folsom prison chaplain; Karl Seigler, Community Resource Manager; L. Cahayla, former Program Associate Warden; and Rick Hill, Warden. All three claims are based on alleged violation of plaintiff's right to a religious diet. ECF No. 11 at 3, 6, 8. All three claims arise from the same events, but each emphasizes a somewhat different dimension of the dispute.

The FAC alleges in sum as follows. Plaintiff, an adherent of the Ifa religion,[1] was a participant in Folsom's Religious Alternative Meat Program (RAMP) from 2010 to 2018. ECF No. 11 at 4. Participants are required to limit their purchase and consumption of food items to those that are part of their approved religious diet. Id. Plaintiff twice purchased ramen soups from the canteen; ramen soups are not approved for RAMP participants because they are not halal (complaint with Islamic dietary law). Pursuant to the institution's religious diet policy, plaintiff was issued a written warning of program non-compliance after the first purchase, and he was removed from the program after the second purchase. Id. at 4-5. Plaintiff purchased the ramen for the purpose of making offerings to the spirits recognized by his religion, not for his personal consumption. Id. at 9.

Liberally construing the allegations, plaintiff contends that the policy conditioning his participation in the religious diet program on forgoing certain canteen purchases violates his rights because it forces him to choose between the independent Ifa religious obligations of diet and sacrifice (making offerings). See id. at 4 (Claim One); id. at 9 (Claim Three). Claim Two alleges that the policy as applied to him is unconstitutional because it prohibits certain purchases based on the items' designation as halal, even though he is Ifa and not Muslim. Id. at 7 ("Plaintiff

---

[1] Ifa is a spiritual belief system of the Yoruba people of Nigeria. ECF No. 1 at 20.

3

was compelled to conform to Islamic dietary law and standards, which is contrary to 'his' religious diet.").

### III. Failure to State a Claim

Incarcerated persons do not forfeit the right to the free exercise of religion, which is guaranteed by the First Amendment. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122-23 (9th Cir. 2013). In the religious diet context, incarcerated persons "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea, 833 F.2d at 198.

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate penological interests." See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-50 (1987); Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs. Jones, 791 F.3d at 1031-32. Plaintiff must demonstrate that prison officials prevented him from engaging in conduct which he sincerely believes is required by his faith. Shakur, 514 F.3d at 884-85. The underlying religious belief must be "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis). The First Amendment substantial burden requirement also applies to claims under RLUIPA. See Greene v. Solano County Jail, 513 F.3d 982, 988 (9th Cir. 2008).

Here, plaintiff's allegations do not rise to the level of a substantial burden on his religious practice. Plaintiff participated in the religious diet program for many years apparently without incident, being provided food for his own consumption that was undisputedly consistent with his religious beliefs. Access to this religious diet was always available to him. After plaintiff's first

non-compliant canteen purchase, he was issued a written warning and thus provided the opportunity to comply with program rules and continue to receive religious meals. His subsequent removal from the program was based on violation of generally applicable program rules, not on an institutional refusal to recognize or honor his religious diet needs. The question becomes whether the restriction on plaintiff's canteen purchases itself imposed a substantial burden on his religious observance.

There is no suggestion here that the prison prohibited plaintiff from making offerings to the spirits generally, or from performing any other religious rite. Plaintiff's inability to purchase ramen (or other prohibited items) with which to make such offerings cannot reasonably be construed as imposing a substantial burden on his exercise of religion.[2] It is the making of offerings, not the purchase of ramen per se, that is the religious obligation at issue here. A reasonable limitation on the items with which offerings can be made does not substantially burden the making of offerings itself. Accordingly, such limitation cannot reasonably be construed as having any coercive effect on plaintiff's religious practices. See Jones, 791 F.3d at 1031-32 (to qualify as substantial burden, restriction must "have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs"); compare Warsoldier v. Woodford, 418 F.3d 989, 995-96 (9th Cir. 2005) (finding Native American prisoner's free exercise rights were likely violated where he was punished for refusing to cut his hair due to his religious beliefs; the punishments were "designed ... to coerce him into compliance."). Absent facts demonstrating a substantial burden, plaintiff fails to state either a First Amendment claim or a claim under RLUIPA. See Jones, 791 F.3d at 1031-32 (First Amendment free exercise); Greene v. Solano County Jail, 513 F.3d 982, 988 (9th Cir. 2008) (RLUIPA).

Moreover, infringement on an inmate's free exercise rights is "judged under a reasonableness test," and the "challenged conduct is valid if it is reasonably related to legitimate

---

[2] The complaint does not allege that Ifa (a Nigerian religious tradition) specifically and affirmatively requires offerings of ramen (a Japanese-style noodle dish), and such an allegation would not be sufficiently plausible to state a claim. See Twombly, 550 U.S. at 570 (claim must be "plausible on its face").

penological interests." Jones, 791 F.3d at 1032 (internal quotation marks omitted) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Here, plaintiff's allegations fail to establish that the limitation on his canteen purchases lacked penological justification. It is well established that requiring compliance with reasonable policies that support the orderly operation of a prison's religious meals program does not violate the First Amendment rights of inmates. See Resnick v. Adams, 348 F.3d 763, 768-71 (9th Cir. 2003). The limitations imposed by Folsom's Religious Diet Program Agreement[3] on its participants are, on their face, reasonably related to legitimate penological interests and therefore permissible under Turner v. Safley. See Resnick, 348 F.3d at 768-71 (upholding prison's religious diet program application policy because reasonably related to the prison's interest in the orderly administration of the program); see also Ward v. Walsh, 1 F.3d 873, 877-879 (9th Cir. 1993) (finding that the interest in a simplified food service may allow a prison to provide a pork-free diet, instead of a fully kosher diet, to an Orthodox Jewish inmate).

Folsom's Religious Diet Program is not constitutionally defective on grounds that it prohibits plaintiff, a non-Muslim, from purchasing halal items at the canteen. The prison's legitimate interests in simplified food service and the orderly administration of its program are plainly served by providing meal options that are acceptable to inmates of multiple faiths, and by restricting purchases to those comestibles that are encompassed by the common religiously acceptable diet(s).[4] Any over-inclusiveness of the canteen limitations as to plaintiff is the consequence of the prison's obvious need for simple rules that can be applied equally to participating inmates of all faiths, while providing all participants with a healthful diet that meets their core religious requirements. This approach easily satisfies the reasonableness test. See Jones, 791 F.3d at 1032; Resnick, 348 F.3d at 768-71; Ward, 1 F.3d at 877-879.

Although plaintiff contends he was "compelled to conform to Islamic dietary law," the facts do not show that he was affirmatively compelled to do anything—he challenges a limitation on his purchases, not a requirement that he eat or do something that is required of Muslims but

---

[3] Plaintiff provided a copy of the Agreement with his initial complaint. ECF No. 1 at 14.
[4] The Religious Diet Program provides three options: Jewish/Kosher, Vegetarian, and the Religious Meat Alternate Program in which plaintiff participated. See ECF No. 1 at 14 (Religious Diet Program Agreement).

forbidden to adherents of Ifa.  Accordingly, there is no coercion within the meaning of free exercise jurisprudence.  See Jones, 791 F.3d at 1031-32 (First Amendment violation by restrictions that "have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs").

For all these reasons, the allegations fail to state a claim for violation of plaintiff's religious rights.

### IV. Further Leave to Amend Is Not Warranted

Leave to amend need not be granted when amendment would be futile.  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  Prior failure to cure deficiencies by amendment supports the denial of further leave to amend.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  In this case, plaintiff has already amended his claims in response to the information and instructions provided when his initial complaint was rejected on screening.  The First Amended Complaint clearly sets forth plaintiff's claims, clarifies their factual and legal bases, and appears to include all facts relevant to this dispute.  For the reasons explained above, those facts do not state a claim for relief as a matter of law.  Accordingly, further amendment would be futile.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

It is FURTHER RECOMMENDED that:

1. The first amended complaint be DISMISSED pursuant to 28 U.S.C. § 1915A(a), without leave to amend, for failure to state a claim upon which relief may be granted; and

2. This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 23, 2021

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE